YNN HOLDING CORPORATION,
Plaintiff,

v.

FEDERAL DEPOSIT INSURANCE CORPORATION, as receiver of Amtrade International Bank of Georgia, a Georgia state bank; Naresh Lalvani, an individual; and American Exporters, Inc., a New Jersey corporation, and Team Ocean Services, Inc., a Texas corporation, Defendants.

No. 02–23200–CIV–KING.

United States District Court,
S.D. Florida,
Miami Division.

Jan. 28, 2005.

William S. Graessle, Esq., William S. Graessle & Associates, P.A., Jacksonville, FL, for Plaintiff.

C. Edward Porch, Esq., Stuart, FL, Paulino A. Nunez, Jr., Esq., Rodriguez, Tramont, Guerra & Nunez, Coral Gables, FL, William H. Hughes, III, Esq., Leslie G. Street, Esq., Pennington, Moore, Wilkerson, Bell & Dunbar, P.A., Tallahassee, FL, for Defendant.

ORDER DENYING FDIC'S MOTION FOR SUMMARY JUDGMENT

JAMES LAWRENCE KING, District Judge.

THIS CAUSE is before the Court upon Federal Deposit Insurance Corporation's

("FDIC") Motion for Summary Judgment (DE # 59), filed September 23, 2004.[1]

## I. BACKGROUND

Plaintiff, YNN HOLDING's Initial Complaint arose out of a failed business transaction in which YNN HOLDING agreed to purchase three microwave disinfection units, at a cost of several million dollars each, from Defendants Naresh Lalvani and American Exporters, Inc. Under the agreement, Defendant AmTrade International Bank of Georgia ("AmTrade") was supposed to issue a letter of credit on YNN HOLDING's behalf to serve as payment for the merchandise. According to YNN HOLDING, despite the fact that Mr. Lalvani and American Exporters failed to deliver the agreed upon merchandise, AmTrade wrongfully issued partial payment to Mr. Lalvani and American Exporters. When YNN HOLDING refused to pay the allegedly wrongfully issued payment, AmTrade held YNN HOLDING in default on the loan.

On September 19, 2002, YNN HOLDING filed its Complaint in the Circuit Court of the Eleventh Judicial Court, in and for Miami–Dade County, Florida against Mr. Lalvani, American Exporters, and AmTrade, seeking declaratory judgment against all three Defendants. YNN HOLDING alleged breach of contract against AmTrade and American Exporters; fraud against Mr. Lalvani and American Exporters; and civil theft against Mr. Lalvani and American Exporters. On September 30, 2002, the Federal Deposit Insurance Corporation ("FDIC") was appointed receiver of AmTrade. As a result, on October 23, 2002, the Miami–Dade County Circuit Court entered an order substituting the FDIC as a defendant in place of AmTrade. On October 30, 2002, pursuant to 12 U.S.C. § 1819(b)(2), FDIC removed the above-styled action to this Court.

On March 16, 2004, YNN HOLDING filed its Amended Complaint. In the Amended Complaint, YNN HOLDING claims that AmTrade failed to act in good faith or use reasonable care in disbursing funds pursuant to the Letter of Credit Agreement, and the Credit Facility Agreement. YNN HOLDING also alleged that the conditions precedent had not occurred for AmTrade to issue the Letter of Credit paying YNN HOLDING for the subject merchandise because it had not concluded its negotiations with Mr. Lalvani and American Exporters.

In the instant Motion, FDIC contends that summary judgment is appropriate because even if YNN HOLDING's allegations are sufficient to sustain a claim against AmTrade, they cannot support a claim against FDIC. FDIC claims that once they were appointed receiver for a failed bank like AmTrade, 12 U.S.C. § 1823(e) limits the claims that can be asserted against the receivership estate. Further, FDIC argues that any claim asserted against them as receiver must be based upon matters that have been documented in the failed bank records.

In response, YNN HOLDING contends that FDIC's Motion should be denied because its Amended Complaint is based upon matters that have been documented in the failed bank records. More specifically, YNN HOLDING states that the

1. On October 27, 2004, Plaintiff YNN HOLDING, filed its Response to FDIC's Motion for Summary Judgment. On November 15, 2004, YNN HOLDING filed its Reply. On January 18, 2005, the Court held Oral Argument on the instant Motion.

Credit Facility Agreement, drafted by Am-Trade and executed by the parties, provides the terms of the agreement and the parties' rights and obligations of the transaction at issue. YNN HOLDING also argues that FDIC'S Motion should be denied because AmTrade's documents and AmTrade's actions present factual disputes requiring resolution by the jury; (i.e., specifically, whether AmTrade breached the Credit Facility Agreement by wrongfully disbursing funds thereunder and wrongfully declaring YNN HOLDING to be in default of the Credit Facility Agreement).

## II. *STANDARD OF REVIEW*

Summary judgment is appropriate only where it is shown that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). If the record as a whole could not lead a rational fact-finder to find for the non-moving party, there is no genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). On a motion for summary judgment, the court must view the evidence and resolve all inferences in the light most favorable to the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). There is no requirement that the trial judge make findings of fact. *Id.* at 251, 106 S.Ct. 2505.

The moving party bears the burden of pointing to that part of the record which shows the absence of a genuine issue of material fact. *Hairston v. Gainesville Sun Pub. Co.*, 9 F.3d 913, 918 (11th Cir. 1993). If the movant meets its burden, the burden then shifts to the non-moving party

to establish that a genuine dispute of material fact exists. *Id.* To meet this burden, the non-moving party must go beyond the pleadings and "come forward with significant, probative evidence demonstrating the existence of a triable issue of fact." *Chanel, Inc. v. Italian Activewear of Florida, Inc.*, 931 F.2d 1472, 1477 (11th Cir.1991). If the evidence relied on is such that a reasonable jury could return a verdict in favor of the non-moving party, then the court should refuse to grant summary judgment. *Hairston*, 9 F.3d at 919. A mere scintilla of evidence in support of the non-moving party's position is insufficient, however, to defeat a motion for summary judgment. *Anderson*, 477 U.S. at 252, 106 S.Ct. 2505. If the evidence is merely colorable or is not significantly probative, summary judgment is proper. *Id.* at 249–50, 106 S.Ct. 2505.

## III. *DISCUSSION*

YNN HOLDING's claim against FDIC is valid if they are based upon matters that are documented in AmTrade's records. Section 1823(e) of the United States Code requires that any agreement, which is to be the basis for a claim against the FDIC, be in writing and be executed by both the failed bank and the person filing a claim under the agreement. Title 12 of the United States Code, section 1823(e) provides in part that:

> No agreement which tends to diminish or defeat the interest of the Corporation in any asset acquired by it under this section or section 1821 of this title, either as security for a loan or by purchase or as receiver of any insured depository institution, shall be valid against the Corporation unless such agreement
>
> (A) is in writing,

(B) was executed by the depository institution and any person claiming an adverse interest thereunder, including the obligor, contemporaneously with the acquisition of the asset by the depository institution,

(C) was approved by the board of directors of the depository institution or its loan committee, which approval shall be reflected in the minutes of said board or committee, and

(D) has been, continuously, from the time of its execution, an official record of the depository institution.

12 U.S.C. § 1823(e). In addition, 12 U.S.C. § 1821(d)(9) of Title 12 provides in relevant part that: "any agreement which does not meet the requirements set forth in section 1823(e) of this title shall not form the basis of, or substantially comprise, a claim against the receiver or the Corporation." 12 U.S.C. § 1821(d)(9). The Eleventh Circuit has held that "[i]n a suit over the enforcement of an agreement originally executed between an insured depository institution and a private party, a private party may not enforce against a federal deposit insurer any obligation not specifically memorialized in a written document such that the agency would be aware of the obligation when conducting an examination of the institution's records." *Murphy v. FDIC,* 208 F.3d 959, 963, (11th Cir.2000); (citing *Baumann v. Savers Federal Sav. and Loan Ass'n,* 934 F.2d 1506, 1515 (11th Cir.1991)).

The focus of YNN HOLDING's claim is that AmTrade breached the Credit Facility Agreement that was drafted, executed, and signed by the parties. The Credit Facility Agreement specifically states both the terms of that governed the transaction at issue and the parties' rights and obligations under their agreement. For example, the Credit Facility Agreement states that the Lender, as a result of the revolving Credit Facility, will make various Disbursements directly to the Suppliers in accordance to the requests for funding presented to the Lender. (Credit Facility Agreement at 1.) The Repayment Schedule states that the principal amount of this Credit Facility Agreement and the Note Shall be repaid in fourteen semiannual payments, beginning on December 25, 2002, for each Disbursement and the interest shall be payable semiannually on each June 25 and December 25, beginning June 25, 2002 through June 25, 2009. (Credit Facility Agreement at 5.) Section 2.1 states that subject to the terms and conditions hereof, the Lender agrees to make, based on its sole and complete discretion, Loan to the Borrower during the Credit Facility Period in an aggregate principal amount not to exceed U.S. $6,925,875.00, to be represented by a promissory note. (Credit Facility Agreement at 6.) Section 2.3 states that in relation to the Procedure for Disbursements, the Borrower (YNN HOLDING) shall present the Lender (AmTrade) requests for funding within 40 days of the dates of shipment of the products, specifying a Business Day during the Credit Facility Period on which such borrowings are to be made, the amount of the Loan and the purpose of the Loan. (Credit Facility Agreement at 7.)

Since the Credit Facility Agreement was found within AmTrade's files and was available to the FDIC when it was conducting an examination of the institution's records, YNN HOLDING's claim against FDIC is not barred under 12 U.S.C. § 1823(e). The Credit Facility Agreement found in AmTrade's records memorialized the agreement that YNN HOLDING is currently seeking to enforce. Therefore, the Court finds that there are disputed

issues of material fact concerning the inferences to be drawn from AmTrade's written documents and its conduct in performing its obligations under the Credit Facility Agreement.

## IV. CONCLUSION

Accordingly, after a careful review of the record and the Court being otherwise fully advised, it is

ORDERED, ADJUDGED and DECREED that FDIC'S Motion for Summary Judgment (DE #59) be, and the same is hereby, DENIED.